IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CV-00451-BO

| | |
|---|---|
| DWAYNE ALLEN DAIL,<br>        Plaintiff,<br><br>        v.<br><br>CITY OF GOLDSBORO, CITY OF<br>GOLDSBORO POLICE CHIEF TIMOTHY<br>J. BELL, *in his official and*<br>*individual capacities*; JASPER M.<br>"JACKIE" WARRICK, JR. *in his*<br>*official and individual capacities*;<br>CHESTER HILL, *in his official and*<br>*individual capacities*, THE ESTATE OF<br>CHESTER HILL, DELORES A. HILL,<br>The Administratix of the Estate of<br>Chester Hill, JOHN WIGGINS, *in his*<br>*individual and official capacities*;<br>RONALD MELVIN, *in his individual*<br>*and official capacities*; THE ESTATE<br>OF RONALD MELVIN, SYLVIA MELVIN,<br>Administratix of the Estate of Ronald<br>Melvin, and JOHN AND JANE DOES 1-10,<br>*in their official and individual*<br>*capacities*,<br>        Defendants. | O R D E R |

The Court has before it (1) a Motion to Dismiss *In Lieu of Answer* [DE 11] filed by Defendants City of Goldsboro, Timothy J. Bell, Jasper M. Warrick, Jr., and John Wiggins; and (2) a Motion to Dismiss *In Lieu of Answer* [DE 20] filed by The Estate of Chester Hill, Delores A. Hill, The Administratix of the Estate of Chester Hill, and The Estate of Ronald Melvin, Sylvia Melvin, Administratrix of the Estate of Ronald Melvin.

On June 2, 2011, the parties argued these Motions before the undersigned at a hearing in Raleigh, North Carolina. In this

posture, the Motions are ripe for adjudication. For the following reasons, the Motions To Dismiss [DE 11, 20] are GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

Plaintiff's allegations-which the Court presently accepts as true-reveal the following unfortunate tale. During the early morning hours of September 4, 1987, a man cut through the screen of Tomeisha Carrington's bedroom window at the Jefferson Park Apartments in Goldsboro, North Carolina. (Amended Compl. ¶ 17.) Twelve-year old Tomeisha was awakened by the noise and ran for her bedroom door, but the intruder stopped her and closed the door. (*Id.*) The intruder ordered Tomeisha back to bed and raped her. After the attack, the intruder escaped through Tomeisha's window. (Amended Compl. ¶ 18.) Tomeisha caught a glimpse of her attacker and would later describe him as a white man with long, dusty or light-brown hair and a beard. (Amended Compl. ¶ 17.)

Tomeisha immediately told her mother what happened. (Amended Compl. ¶ 18.) Tomeisha's mother called 911, and police officers from the City of Goldsboro Police Department arrived within minutes. Tomeisha was taken to the hospital for examination and treatment. (Amended Compl. ¶ 18.) A rape kit was administered at the hospital. An examination of the rape kit revealed the presence of sperm on Tomeisha's vaginal swabs and panties.

Law enforcement authorities gathered various pieces of

2

physical evidence, including Tomeisha's nightgown, her panties, and some debris vacuumed from a second-hand throw rug next to Tomeisha's bed. Among the debris, investigators found forty (40) African-American hairs and three (3) Caucasian hairs. (Amended Compl. ¶ 21.) Of the Caucasian hairs, two pubic hairs were inconsistent with those of Plaintiff Dwayne Dail, but one head hair was "found to be microscopically consistent" with Dail's head hair. (Amended Compl. ¶ 21.)

During the next few weeks, the authorities were unable to identify a suspect. (Amended Compl. ¶ 19.) But then Tomeisha's mother saw a man drive past the apartment building who, suspiciously, appeared to look at her apartment window. About three weeks later, Tomeisha's mother saw the same man in the apartment complex parking lot with some friends. (Amended Compl. ¶ 20.) With Tomeisha in tow, Tomeisha's mother walked through the parking lot. Sensing that Tomeisha tensed up as they approached the crowd, Tomeisha's mother asked Tomeisha if she saw the man who had raped her; Tomeisha responded that she had. (Amended Compl. ¶ 20.) Dail was one of the young men in the parking lot, and, the pleadings allege, Tomeisha believed that he was the man who attacked her on September 4, 1987.

Dail was arrested and charged with first-degree burglary, first-degree sexual offense, first-degree rape, indecent liberties, and lewd and lascivious acts. (Amended Compl. ¶ 22.) The

3

prosecution's evidence consisted largely of Tomeisha's parking lot identification of Dail six weeks after the rape and the Caucasian head hair that "could have originated from Dwayne Dail." (Amended Compl. ¶ 24.) A Wayne County jury found Dail guilty on all counts[1], and he was sentenced to two life-sentences plus eighteen (18) years. (Amended Compl. ¶ 24.) Dail was remanded to the custody of the North Carolina Department of Corrections to serve his sentence.

By 1995, Dail had heard of the burgeoning science of DNA analysis. That year, through his attorney, Dail requested that the physical evidence from his case be preserved for DNA testing. (Amended Compl. ¶ 26.) The Goldsboro City Attorney, however, told Dail that the Wayne County Clerk's Office destroyed the evidence from Dail's case in 1994. (Amended Compl. ¶ 26.)

In the years following 1995, volunteers with The Innocence Project and The North Carolina Center on Actual Innocence made inquiries to Defendants regarding the evidence in Dail's case. (Amended Compl. ¶ 26.) On each occasion, officials with the Goldsboro Police Department told Dail's representatives that the rape kit was destroyed in 1994, that there was no physical evidence left from the case, and that the Goldsboro Police Department only kept evidence from murder cases from the 1980s. (Amended Compl. ¶ 27.)

In June of 2007, the officer in charge of the Goldsboro Police

---

[1]The charge of lewd and lascivious acts was dropped during the trial. (Amended Compl. ¶ 24.)

Department's evidence team responded to an inquiry from a representative of Dail and reported that evidence in several old cases, including Dail's, had been found. (Amended Compl. ¶ 28.)

When he learned that evidence from his case existed, Dail requested that all of the evidence be tested against his DNA. (Amended Compl. ¶ 29.) Defendants acquiesced to Dail's request. The evidence was then sent to the North Carolina State Bureau of Investigation ("SBI") lab for testing. The SBI determined that there was biological matter in sufficient quantity and quality to test for DNA. (Amended Compl. ¶ 29.) On August 27, 2007, the Wayne County District Attorney informed Dail's representatives that there was a complete DNA profile from the sperm on the nightgown and that it did not match Dail's DNA profile. (Amended Compl. ¶ 29.) The DNA did, however, match the profile of someone else who was incarcerated in the North Carolina prison system. (Amended Compl. ¶ 30.) In the face of this evidence, the Wayne County District Attorney dismissed all charges against Dail with prejudice on the basis of Dail's innocence. (Amended Compl. ¶¶ 29-30.) After almost two decades of wrongful incarceration, Dail's claims of innocence were vindicated and the State released him from custody.

Dail brought the present action by filing a Complaint on August 26, 2010 and an Amended Complaint on September 17, 2010 in the Superior Court of Wayne County. In his Amended Complaint, Dail asserts a claim under 42 U.S.C. § 1983, on the theory that Dail's

5

constitutional rights were violated "including but not limited to, his due process rights and the right to not be subject to improper deprivations of liberty in the pursuit of happiness." Dail further alleges claims under section 1983 against certain Defendants in their individual capacities for a violation of Dail's constitutional rights based on "the adherence to unconstitutional policies, customs, and practices." Dail also alleges North Carolina state tort claims for obstruction of justice, false arrest/false imprisonment, negligence, negligent infliction of emotional distress, negligent loss of evidence as well as a claim arising directly under the North Carolina Constitution.

On October 21, 2010, Defendants removed this case to federal court based on Dail's assertion of claims arising under federal law. On November 22, 2010 and January 12, 2011, Defendants filed Motions to Dismiss *In Lieu of Answer* [DE 11, 20] under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Motions are ripe for adjudication.

## II. DISCUSSION

### A. The Legal Standards

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint."

*Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).

### B. <u>Defendants' Motions To Dismiss</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have moved to dismiss the Amended Complaint, asserting that Plaintiff fails to state a claim for which relief can be granted. Defendants' Motions will be granted in part and denied in part for the reasons set forth below.

#### 1. <u>Plaintiff's First Cause Of Action: 42 U.S.C. § 1983 "*Monell*" Claim</u>

Dail's First Cause of Action alleges direct section 1983 liability against Defendant City of Goldsboro under the doctrine announced in *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978). Under section 1983, a state actor may be liable if the actor "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see also, Randall v. Prince George's County, Md.*, 302 F.3d 188, 193 n.1

7

(4th Cir. 2002). Section 1983 does not create a right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

In *Monell*, the Supreme Court held that a local governmental body cannot be subject to <u>vicarious</u> liability under section 1983; however, the Court held that <u>direct</u> liability attaches under section 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." *Monell*, 436 U.S. at 694. In other words, for a plaintiff to have recourse against a municipality under section 1983, he must show a constitutional injury caused by a municipal policy or custom. *See id.*

Dail's First Cause of Action alleges, *inter alia*, that the City of Goldsboro's evidence retention policies "deprived [him] of his constitutional rights, including but not limited to, his due process rights and the right to not be subject to improper deprivations of liberty and the pursuit of happiness." (Amended Compl. ¶ 41.) Defendants attack Dail's First Cause of Action on the basis of a recent Supreme Court case. The case, *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, ___ U.S. ___, 129 S.Ct. 2308 (2009), Defendants contend, greatly narrows the type of section 1983 claim Dail can allege. Defendants argue that *Osborne*

8

limits Dail's First Cause of Action merely to a claim for a procedural due process violation based on the facial and practical adequacy of North Carolina's procedures for accessing postconviction evidence. Under that analysis, Defendants contend, Dail has not--and cannot--allege a procedural due process claim since Dail failed to test the state-created procedures for accessing evidence via a formal motion filed in the trial courts of North Carolina. Defendants argue, therefore, that Dail's First Cause of Action fails to state a claim for which relief can be granted. Defendants' arguments are unpersuasive.

As an initial matter, the *Osborne* holding does not control here since this case is factually and legally distinguishable from *Osborne*. In the *Osborne* case, a state inmate sought access to DNA evidence that the inmate alleged would establish his innocence. The inmate brought his claims through a section 1983 lawsuit based on his alleged constitutional right to prove that he was actually innocent of the crime for which he was incarcerated.

The Supreme Court rejected the inmate's claim. The Court found that contrary to the inmate's allegations, there is no "freestanding" constitutional due process right to postconviction DNA testing, even to establish actual innocence. *Osborne*, 129 S.Ct. at 2322. The *Osborne* Court went on to find, however, that when a State enacts a law granting postconviction defendants a right to evidence and a procedure for accessing that evidence, the State

9

creates a liberty interest that is itself shrouded in due process protection. *Id.* at 2320.

But this case is different. Unlike the inmate in *Osborne*, Dail does not attempt to use section 1983 to access postconviction evidence that could vindicate his claims of innocence in the future. Dail has already accessed the DNA evidence in his case and has used that evidence to establish his innocence and secure his release from state custody. Dail, unlike the inmate in *Osborne*, now uses section 1983 to seek redress for the Defendants' allegedly unconstitutional evidence retention policies. The interests that were at play before the Supreme Court in *Osborne* are distinct from those at play in this case. *Osborne* is the wrong framework for analyzing Dail's claims and this Court, therefore, is not bound by *Osborne*'s holding.

With *Osborne* out of the analysis, the Court finds that Dail has sufficiently alleged that the City of Goldsboro's evidence retention and request policies and procedures deprived Dail of a constitutionally protected liberty interest to be free from unjustifiable confinement. (Amended Compl. ¶¶ 38-42.) Dail's claim is cognizable in a section 1983 lawsuit under *Monell*.

Alternatively, the Court finds that even if *Osborne* were to apply in this case, Dail's section 1983 claim would still survive Defendant's Rule 12(b)(6) attack. As previously mentioned, the *Osborne* Court held that when a State enacts a statute providing

10

postconviction defendants a right to access evidence and a procedure to do so, the state creates an entitlement that is itself protected by the Due Process Clause. *Osborne*, 129 S.Ct. at 2320.

The citizens of North Carolina vested such a constitutionally protected entitlement in Dail and by enacting N.C. Gen. Stat. § 15A-1415(c). The § 15A-1415(c) entitlement allowed Dail, during his period of confinement, to:

> [b]y a motion for appropriate relief, raise the ground that evidence is available which was unknown or unavailable to the defendant at the time of trial, which could not with due diligence have been discovered or made available at that time, including recanted testimony, and which has a direct and material bearing upon the defendant's eligibility for the death penalty or the defendant's guilt or innocence.

N.C. Gen. Stat. § 15A-1415(c).

Construing N.C. Gen. Stat. § 15A-1415(c) under *Osborne*, Dail clearly had "a liberty interest in demonstrating his innocence with new evidence under state law." *Osborne*, 129 S.Ct. at 2319. Moreover, as the Supreme Court explicitly recognized in *Osborne*, Dail's "'state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right.'" *Osborne*, 129 S.Ct. at 2319 (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981) and *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974)). To that end, this Court finds that Dail's § 15A-1415(c) entitlement was logically and necessarily accompanied by an implied right to receive reasonably accurate and truthful information from those State actors who

11

voluntarily responded to Dail's informal requests for evidence. Such a right to reasonably accurate and truthful information falls within the "other rights to procedures essential to the realization of the parent right." *Id.*

With *Osborne*'s principles in mind, the Court finds that Dail has sufficiently alleged that his state-created entitlement under N.C. Gen. Stat. § 15A-1415(c) was thwarted by Defendants' evidence retention policies. (Amended Compl. ¶¶ 38-42.) Dail clearly alleges that due to their deficient evidence retention policies, Defendants misinformed Dail, for at least 12 years, that the evidence in Dail's case was unavailable for testing. (Amended Compl. ¶¶ 1-3, 38-42.) Defendants' policy, therefore, practically thwarted Dail's ability to obtain evidence that at all times was under the exclusive control of Defendants and the testing of which would have led to his release pursuant to North Carolina's procedures for postconviction relief. (Amended Compl. ¶¶ 1-3, 38-42.)

Defendant's argue, however, that Dail's alleged failure to formally file a motion under N.C. Gen. Stat. § 15A-1415(c) is fatal to his claim. But there are at least two flaws with Defendants' arguments.

As an initial matter, Defendants' factual assertions regarding Dail's actions during his period of incarceration are procedurally premature. At this stage of the proceeding, the Court is concerned

12

only with the legal sufficiency of Dail's Amended Complaint. *Giacomelli*, 588 F.3d at 192. Defendants' attacks on Dail's version of the facts should be raised at summary judgment or at trial.

Moreover, even assuming that Dail did not file a formal motion for evidence under § 15A-1415(c), that fact, standing in isolation, does not necessarily foreclose Dail's claim. The essence of the Amended Complaint is that Dail was unconstitutionally injured by the Defendants' evidence retention policies. As a result of those allegedly flawed policies, Defendants continually misinformed Dail that no evidence existed from his case. Defendants' alleged misrepresentations therefore created the appearance that Dail's filing of a motion under § 15A-1415(c) would be futile.

Neither common sense nor the common law would compel a man to take an action that reasonably appears to be futile or wasteful. But that very principle-that Dail should have persisted with a formal § 15A-1415(c) motion in the face of futility-animates Defendants' Motions to Dismiss. Defendants' position plainly and unjustly ignores the effect that the Defendants' *own* wrongful conduct and policies had on Dail's decision to file a motion under § 15A-1415(c). That conduct, practically speaking, thwarted Dail's ability to vindicate his state-created entitlement.

Accordingly, the Court finds the Amended Complaint sufficiently alleges that the Defendants' evidence retention policies deprived Dail of his constitutional rights by making it

13

practically impossible for Dail to vindicate his state-created entitlement to evidence under § 15A-1415(c). Even construed under *Osborne*, Dail states a claim for which relief can be granted.

### 2. Plaintiff's Remaining Federal Claims

The Court turns next to Plaintiff's other federal claims for relief. Plaintiff's Seventh Cause of Action attempts to establish the Defendants' liability in their individual capacities based on an alleged failure to "disclose exculpatory evidence in violation of [Plaintiff's] constitutional rights as recognized in *Brady v. Maryland*, 373 U.S. 83 (1963)." (Amended Compl. ¶ 65.) Plaintiff's Eighth Cause of Action attempts to establish that the Defendants should not be entitled to qualified immunity and should be held liable in their individual capacities for their alleged constitutional violations.

The Defendants have moved to dismiss both the Seventh and Eighth Causes of Action, and Dail does not contest the dismissal of these claims. (Pl.'s Mem. in Opp. Def.'s Mot. to Dismiss p.2 n.1.) The Court agrees that dismissal is proper, and considering these claims on the merits, the Court finds they cannot lie as a matter of law.

First, the Court finds that Plaintiff's individual capacity *Brady* Claim (Seventh Cause of Action) cannot lie because "[a] criminal defendant found guilty after a fair trial does not have the same liberty interests as a free man." *Osborne*, 129 S.Ct at

14

2320. Although Dail did not commit the acts that led to his wrongful incarceration, he was proved guilty after a fair trial and he makes no allegations to the contrary. Instead of attacking the Defendants' conduct at trial, Dail's case focuses on the Defendants' post-trial actions that led to an unreasonable deprivation of Dail's liberty. As a result, "*Brady* is the wrong framework" for analyzing Plaintiff's case, and the Seventh Cause of Action fails. *Osborne*, 129 S.Ct. at 2320. Dail's Seventh Cause of Action is dismissed with prejudice.

The Court further finds that Plaintiff's individual capacity due process claim (Eighth Cause of Action) cannot lie because qualified immunity shields the Defendants from this claim. Since *Osborne* only belatedly addressed the due process protections associated with postconviction DNA testing, Dail's rights in this case had not been clearly established during the relevant time period. *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 815-16 (2009). Without clear Supreme Court or Fourth Circuit authority on point, the individual Defendants were not on notice of the Plaintiff's federal due process rights or of the fact that they each faced potential personal liability for violating those rights. Dail's Eighth Cause of Action is dismissed with prejudice.

    3.    **Plaintiff's State Law Obstruction of Justice and Negligence Claims**

Plaintiff's Second, Fourth, Fifth, and Sixth Causes of Action

sound in obstruction of justice and negligence.[2] Defendants contend that the applicable statutes of limitations have run on these claims and that the claims must therefore be dismissed. The Court disagrees.

North Carolina law imposes a three-year statute of limitations for negligence actions. N.C. Gen. Stat. § 1-52; *Pompano Masonry Corp. v. HDR Architecture, Inc.*, 165 N.C. App. 401, 409 (2004). Under the discovery rule in N.C. Gen. Stat. § 1-52(16), the negligence action accrues at the time the plaintiff discovers, or reasonably should have discovered, the injury or damage, as long as it is within ten years of the defendant's negligence. *Pompano Masonry*, 165 N.C. App. at 409. And like a negligence claim, an obstruction of justice claim "must be brought within three years from the time the cause of action accrues, and an action accrues when a plaintiff becomes aware or reasonably should have become aware of the fraud or harm." *Self v. Yelton*, 688 S.E.2d 34, 38-39, ___ N.C. App. ___ (2010) (citing N.C. Gen. Stat. § 1-52(9) & (16)).

In this case, the Court finds that Dail did not discover, and could not reasonably have discovered, that he was injured by Defendants' alleged negligence and obstruction of justice until the

---

[2] Plaintiff alleges both general negligence (Fourth Cause of Action) (Amended Compl. ¶¶ 52-55) and a separate claim for "Negligent Loss of Evidence." (Sixth Cause of Action) (Amended Compl. ¶¶ 60-63.) The Court finds that the Sixth Cause of Action is embraced by and therefore redundant in light of the Plaintiff's Fourth Cause of Action. All claims sounding in negligence shall therefore be consolidated into the Fourth Cause of Action, and the Sixth Cause of Action shall be dismissed without prejudice.

16

Case 5:10-cv-00451-BO   Document 31   Filed 07/14/11   Page 16 of 18

DNA evidence proved that Dail was innocent exonerated him. Had the evidence not exonerated Dail, then his inability to obtain the evidence would not have injured him in any way.

In sum, the Court finds that Dail's state law claims did not accrue until he was exonerated and released from prison on August 28, 2007. Dail's state law claims were thus timely filed on August 26, 2010. Defendants' Motions to Dismiss are denied with respect to Dail's Obstruction of Justice and Negligence Claims except that the redundant Sixth Cause of Action is dismissed without prejudice.

### 4. Dail's State Constitutional Claims

Finally, Defendants move to dismiss Plaintiff's claims arising directly under the North Carolina Constitution (Ninth Cause of Action). In North Carolina, a direct claim under the State constitution is available only "in the absence of an adequate state remedy." *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782, *cert. denied*, *Durham v. Corum*, 506 U.S. 985 (1992). At this stage of the proceeding, however, it is impossible to determine if Dail has an "adequate state remedy" aside from his State constitutional claims. It is premature, therefore, for this Court to dismiss Dail's claims under the North Carolina Constitution.

17

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motions To Dismiss *In Lieu Of Answer* [DE 11, 20] are **GRANTED IN PART** and **DENIED IN PART**;

(2) Plaintiff's Seventh, and Eighth Causes of Action are **DISMISSED WITH PREJUDICE**; and

(3) Plaintiff's Sixth Cause of Action is **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED, this 13 day of July, 2011.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE